NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1810
_____

MEELEE KIMBER-ANDERSON; SHERRI FRANKLIN;
YEDDA MASON; LORETTA YOUNGBLOOD; ZARIFA WILSON,
                                                              Appellants

v.

CITY OF NEWARK; DAVID J GIORDANO, Individually and in his official capacity as
Fire Director

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cv-06309)
District Judge:  Honorable Dickinson R. Debevoise
_____

Submitted Under Third Circuit LAR 34.1(a)
September 25, 2012

Before:  McKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: October 26, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Meelee Kimber-Anderson, Sherri Franklin, Yedda Mason, Loretta Youngblood,

and Zarifa Wilson (collectively, "Appellants") appeal the grant of summary judgment by

the United States District Court for the District of New Jersey in favor of the City of

Newark and its Fire Director, David Giordano, (collectively, the "City") on Appellants'

gender discrimination claims. For the following reasons, we will affirm.

## I. Background

Each of the Appellants is a Fire Prevention Specialist ("FPS") who works for the

City.[1] An FPS's job duties include the inspection of buildings to ensure compliance with

the fire codes. In New Jersey, an FPS generally takes specific coursework and passes a

state-administered examination to become certified. State law requires that, to have

authority to approve the results of the inspection of certain larger buildings – classified as

life hazard use ("LHU") structures – an FPS must be certified. Prior to being hired,

Appellants, all of whom are women, obtained the requisite state certification.

Several years after Appellants were hired by the City, several additional FPS hires

were made.[2] Those new employees were men and did not obtain state certification prior

to being hired.

Believing that the men who had been hired were favored over Appellants in a

number of ways because of their gender, Appellants brought the present lawsuit in the

District Court, claiming that the City engaged in gender-based discrimination in violation

of state and federal law. The state law claims were brought under the New Jersey Law

Against Discrimination ("NJLAD"), N.J.S.A. § 10:5, for disparate treatment and hostile

---

[1] Four of the five Appellants remain with the City's Fire Department while Wilson resigned to pursue another position within the city.

[2] The last of the Appellants was hired in 2002 while the new employees were hired in 2006.

work environment. Though given comparatively little mention, Appellants also brought a federal claim under 42 U.S.C. § 1983, arguing that the City violated their equal protection rights. The City moved for summary judgment on each of Appellants' claims and the District Court granted that motion. Appellants filed a timely appeal.

## II. Discussion[3]

Appellants argue that the District Court erred in dismissing their discrimination, hostile work environment, and § 1983 claims because the facts support those claims. First, Appellants say that the male employees were hired by corrupt processes, were not qualified for their positions, and continued to be retained despite their failure to obtain certification in a timely fashion. Second, they contend that, while the City paid for the male employees' certification coursework, those expenses were not covered for Appellants. Third, they submit that they were forced to use personal vehicles to conduct fire safety inspections throughout the city, while three of the male employees had access to city vehicles. Fourth, they complain that, while they unsuccessfully requested cellular phones to assist in the performance of their duties, one of the male employees received such a phone. Fifth, they argue that, while they had to wait for a period of time after being hired to have access to overtime opportunities, the male FPS hires received

---

[3] The District Court had jurisdiction over the federal claim pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). "A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005) (internal citation and quotation marks omitted).

3

immediate access to such opportunities. Sixth, they note that one of the male FPS hires was paid significantly more than them, despite being inexperienced. Finally, they assert that, as a result of the male hires' incompetence, they were forced to work longer hours.

The NJLAD prohibits, among other things, discrimination on the basis of gender. *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993). Disparate treatment claims under the NJLAD are evaluated using the familiar framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). *See Dixon v. Rutgers, The State Univ. of New Jersey*, 541 A.2d 1046, 1051 (N.J. 1988). Following that framework the plaintiff must first come forward with sufficient evidence to constitute a prima facie case of discrimination. *Id.* If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to demonstrate that there was a legitimate, non-discriminatory purpose for the actions taken. *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996). In order to establish a prima facie case of discrimination, the plaintiff must show that she belongs to a protected class, that she was performing her job at a level that met her employer's legitimate expectations, that she suffered an adverse employment action, and that others not within that protected class did not suffer similar adverse employment actions. *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1182 (N.J. Super. Ct. App. Div. 2005). Said another way, the plaintiff must show that an adverse employment action occurred and that the facts reflect that discrimination was the cause for that action. *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996).

4

Appellants are unable to meet the prima facie case threshold because they cannot demonstrate that they suffered an adverse employment action that others outside of their protected class did not suffer. Appellants complain that their coursework was not paid for, but the undisputed facts demonstrate that the City had a uniform policy of covering coursework for current employees only. Further, two of the Appellants concede that coursework they took during their employment was paid for by the City. That the City would not pay for coursework taken by an individual prior to being hired does not constitute gender discrimination.

Appellants also complain that only certain male officers were permitted to use City vehicles to conduct inspections, but the record shows that the department had very few vehicles available, and those were in various states of disrepair. One of those vehicles was utilized by a male FPS who also served as the City's lone hazmat inspector and needed to be available at all times.[4] In lieu of City vehicles, Appellants (along with most male FPS hires) were paid a stipend to defray the cost of using personal vehicles. Indeed, one of the Appellants testified that she would not have taken a City vehicle even if offered.

Appellants contend that they were required to work additional hours, in part, because they had to train the inexperienced male employees. Appellants ignore, however, the City's policy of pairing less experienced employees with a more experienced FPS. It is true that when the male employees were hired in 2006, the by-

---

[4] Appellants likewise complain that they were not given cellular telephones, but only the City's hazmat inspector received such a phone.

then-experienced Appellants were asked to play a training role. But the City points out that, when they were hired, the Appellants were likewise trained by more experienced employees. Appellants also submit that, training aside, the addition of the new hires substantially increased their workload. Their assertion, however, is unexplained and hard to understand.[5] At any rate, as the City points out, Appellants' employment terms were a union-negotiated 40-hour workweek along with overtime. Appellants have not argued that they were not compensated for any time that they worked or that there was a violation of their employment agreement.[6]

Appellants also argue that the hiring and preferential treatment of the male FPS employees created a hostile work environment. In order to successfully mount a hostile work environment claim under the NJLAD, Appellants must show that the complained-of

---

[5] Even if the new hires performed no work, the Appellants' workload would have remained what it was before the men were hired. It is possible, perhaps, that the new hires were actually worse than ciphers, but the argument seems to be that "[p]laintiffs had to follow up on all of the men's work in order to check that it was done correctly … ." (Appellants' Opening Br. at 21.) If that is true, it means that they were required to do some portion of the work they would have had to do anyway, had there been no new hires. It also does not explain the alleged increase in workload.

[6] Appellants also complain that they were not paid for time spent in certification classes while the male FPS hires were. However, they provide no evidence to support that allegation. Likewise, Appellants argue a disparity in access to overtime without providing any evidence to support that claim. In fact, this allegation seems contrary to their complaint that they had too much work to do because of incompetent men. With respect to their complaint that one male FPS was paid more, while the basis for that employee's higher wage has gone unexplained, the mere fact that one man happened to receive a higher salary cannot alone be the basis for a gender discrimination claim. Proof of discriminatory motive is required, and one instance of higher pay is insufficient to infer such a motive. *See Peper v. Princeton Univ. Bd. of Trustees*, 389 A.2d 465, 478-79 (N.J. 1978) (stating that "[p]roof of discriminatory motive is critical" in gender discrimination claims and that such motive is not automatically inferred).

6

conduct occurred because of their gender and that it was severe and pervasive enough to make a reasonable woman believe that the working environment was hostile or abusive. *Lehmann*, 626 A.2d at 453-54.  In determining whether alleged conduct rises to the level of creating a hostile work environment, we look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance."  *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (citation omitted), *abrogated on other grounds as recognized by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).[7]

Appellants argue that there was a "sudden increase in workload" because the male employees were not carrying their weight and were not certified to perform LHU inspections.[8]  (Appellants' Opening Br. at 21.)  As a result, Appellants allege an "intense animosity" developed between them and the male FPS hires.  (*Id*. at 22.)  They argue that one of the hires in particular was rude to the women and twice called one of the Appellants a "bitch."  (*Id*. at 23.)  Even if it were true that relations were strained, however, those circumstances are insufficient to show a hostile work environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that gender discrimination claims are not intended to remedy "the ordinary tribulations of the

---

[7] While *Weston* relates to a Title VII sexual harassment claim, the Supreme Court of New Jersey has "frequently looked to federal precedent governing Title VII" in "construing the terms of the [NJ]LAD."  *Lehmann*, 626 A.2d at 452.

[8] Again, how new hires became the cause of new work (*i.e.*, work Appellants would not have had to do if there had been no new hires) is simply left to the imagination.

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" (citation and internal quotation marks omitted)).

Finally, Appellants argue that the City violated their right to equal protection of the law as guaranteed by the 14th Amendment. In order to sustain an equal protection violation claim under § 1983, Appellants must show that they were subjected to intentional discrimination. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.") For the reasons discussed above, Appellants are unable to do so and, as a result, their § 1983 claim must also fail.

## III.   Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.